UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN EDWARD PATRICK MUTZ,

      Plaintiff,                Civil Action No. 18-13703

          v.                DISTRICT JUDGE STEVEN J. MURPHY, III
                                 MAGISTRATE JUDGE R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Steven Edward Patrick Mutz ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying his application for  Supplemental Security Income ("SSI") under the Social Security Act.  The parties have filed cross-motions for summary judgment.  Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #12] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #11] be DENIED.

## PROCEDURAL HISTORY

On February 4, 2016, Plaintiff applied for SSI, alleging disability as of December 1, 2015 (Tr. 16).  Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on September 25, 2017 in Oak Park, Michigan (Tr. 31).  Patricia S. McKay, Administrative Law Judge ("ALJ") presided.  Plaintiff, represented attorney Michael J. White,  testified (Tr. 36-46), as did Vocational Expert ("VE") Judith Findora (Tr. 46-51).  On April 4, 2018, ALJ McKay found Plaintiff not disabled (Tr. 16-26).  On October 23, 2018, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed suit in this Court on November 28, 2018.

## BACKGROUND FACTS

Plaintiff, born November 30, 1990, was 27 when ALJ McKay issued her decision (Tr. 16, 26).  He completed 12th grade and worked formerly as a dishwasher, receiver at a grocery store, and sales associate (Tr. 144).  He alleges disability as a result of anxiety, depression, and autism spectrum disorder (Tr. 143).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

He was "very uncomfortable" around others, adding that his discomfort increased in larger groups causing him to "withdraw into [him]self" (Tr. 36).  He perceived that as a "quiet, reserved" person others were "judging" him (Tr. 37).  He felt that he was in control of his life when he was by himself watching television or reading books (Tr. 37).  He

interacted with his mother and half-sister at home but was more comfortable when he was in his own room (Tr. 37). His discomfort with others was characterized by fidgeting, sweats, hyperventilation, and headaches (Tr. 38-39). He sometimes put off caring for personal hygiene until being reminded by his mother (Tr. 38). He was "extremely uncomfortable" in work situations with "extreme" anxiety about performing his job correctly (Tr. 38). His work-related anxiety lasted from the time he attempted to find work until he ended up leaving the job (Tr. 39).

Since graduating from high school, Plaintiff was unable hold a job for any meaningful length of time due to anxiety (Tr. 40). He experienced anxiety during his school years, noting that he missed around two days of school each month (Tr. 40). He was not in special education during his school years, and attended Baker College "very briefly" (Tr. 41). His attempts to find work through a job placement program were not successful (Tr. 41). He stood around 5' 10" and weighed 230 pounds (Tr. 42). He did not have a driver's license (Tr. 42). He used a bike for local errands but otherwise relied on his mother for transportation (Tr. 43). He spent most of his days reading, watching television, or playing video games (Tr. 43). He enjoyed reading science fiction novels and mysteries (Tr. 44). He did not keep in touch with high school classmates (Tr. 44). He was able to do laundry (Tr. 43).

Plaintiff had changed mental health treatment several times due to insurance issues or because he wasn't "connecting with the therapist" (Tr. 44). He took psychotropic medication and did not experience side effects (Tr. 45-46). He did not smoke, drink, or use

illicit drugs (Tr. 46).  He was unable to work due to job environment anxiety that was so bad that he could "barely keep control of [him]self" (Tr. 46).

### B.    Medical Evidence

#### 1.  Treating Sources

March, 2014 psychological records note Plaintiff's report of social anxiety (Tr. 190). The same records note that Plaintiff was a "bright student in high school," had never been treated for psychiatric problems, and had helped take care of his grandmother (Tr. 190). Plaintiff was cooperative with normal thought processes, orientation, and memory (Tr. 191). Plaintiff reported that his social anxiety had increased since graduating from high school due to not having a routine (Tr. 193).  He reported that he went to the grocery store with his mother "when needed" (Tr. 197).  He reported a good relationship with his mother and younger sister and enjoyed writing and reading (Tr. 197-198).  He reported that he had worked at Target over the holidays but "became frustrated and quit" after two weeks (Tr. 199).  He was assigned a GAF of 50 based on social anxiety and his report of headaches[1] (Tr. 192).

---

[1]

A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000)

-4-

June, 2015 records note that Plaintiff had never taken medication for anxiety (Tr. 205). He appeared anxious (Tr. 208). He reported migraines lasting a few hours which were resolved with over-the-counter pain relievers (Tr. 209). Counseling records from the same month note that Plaintiff was eager to prepare himself for employment (Tr. 215). He demonstrated a normal affect and stable mood (Tr. 215). He received a good prognosis (Tr. 215). August, 2015 records note that Plaintiff was preparing to start a job as a receiver at Meijer (Tr. 213, 287). The same month, Lauren Blenman, D.O. noted Plaintiff's report that the prescribed medication of Celexa caused sleep disturbances (Tr. 251). Dr. Blenman's records from the next month note Plaintiff's report that he experienced ergophobia[2] (Tr. 247). October, 2015 records note that Plaintiff's counseling goals were "partially achieved" with a good prognosis (Tr. 211, 284). December, 2015 records note that Klonopin reduced Plaintiff's worry/anxiety (Tr. 227).

Dr. Blenman's February, 2016 records note that Plaintiff felt that "he may be transgender" (Tr. 235). May, 2016 counseling records note the conditions of social anxiety, depression, and gender dysphoria (Tr. 281). July, 2016 counseling records note Plaintiff's report of reduced anxiety with "self-calming skills" introduced at an earlier session (Tr. 276). Plaintiff reported that his anxiety, at worst, did not go higher than a "six" on a one-to-ten scale (Tr. 276). Plaintiff reported continued improvement in anxiety levels the following

---

[2]

Medicinenet.com defines ergophobia as "an abnormal and persistent fear of work." https://www. medicinenet.com/script/main/art.asp?articlekey=12230. (Last visited September10, 2019).

month (Tr. 275).

Dr. Blenman's September, 2016 records note that Plaintiff was changing counselors to "hopefully find someone he connects with more" (Tr. 304).  She noted Plaintiff's report that he had been riding his bike more frequently but had not tried to find a job and was not interested in online classes (Tr. 304).

In January, 2017 Dr. Blenman noted that Plaintiff had a stationary exercise bike and read and played video games for fun (Tr. 302).  In April, 2017, Dr. Blenman encouraged Plaintiff to look for a part time job "for [a] sense of purpose" and to "increase activity" (Tr. 300).   A May, 2017 assessment notes that Plaintiff was "dependent," "depressed," "emotional," "fearful," "immature," "nervous," "quiet," "resistant to change," and "unmotivated" (Tr. 260).  Results of a self evaluation reflected "mild anxiety" and "moderate depression" (Tr. 261).  Test results also showed "schizoid, avoidant, and dependent traits" (Tr. 266).  Arthur Lewandowski, Ph.D. recommended medication and regular therapy with the goals of developing a daily routine and increasing self esteem and coping skills (Tr. 269).  The following month, Dr. Blenman noted that Plaintiff had undergone neuropsychological testing the previous month and was "hoping having established diagnoses will help him get disability" (Tr. 298).  She noted Plaintiff's report of "feeling less down" since increasing his dose of Effexor (Tr. 292).

## 2.  Non-Treating Sources

In May, 2016, Robert Newhouse, M.D. performed a non-examining review of the treating and examining records on behalf of the SSA, finding that as a result of an affective disorder, anxiety-related disorders, and autistic disorder, Plaintiff experienced mild restriction in activities of daily living, marked limitation in social functioning, and moderate limitation in concentration, persistence and pace (Tr. 57).  Dr. Newhouse concluded that Plaintiff "appear[ed] able to do simple tasks on [a] sustained basis however would need to be in [a] position with little contact with others" (Tr. 60).

### C.  Vocational Expert Testimony

ALJ McKay found that none of Plaintiff's work activity rose to the level of "past relevant work" (Tr. 47).  She then posed the following question to VE Findora, describing a hypothetical individual of Plaintiff's age, education, and work experience who was capable of "the full range of exertional work" with the following limitations:

> This person would be limited to working only occasionally with coworkers, supervisors or the public; he would do best in a low stress environment so that he's working at his own pace and he's not working at a production rate or where his duties are interdependent with his coworkers; and the work should be simple and routine and repetitive; looking at those limitations for a starting point, are there any jobs that exist that he could perform? (Tr. 47-48)

The VE testified that the above limitations would allow for the unskilled, exertionally medium or exertionally light work of a cleaner (1,200,000 and 800,000 jobs respectively in the national economy) and the unskilled, exertionally medium, light, or sedentary jobs of

packer (200,000, 400,000, and 64,000) (Tr. 48).[3]  The VE testified that if the individual were

additionally restricted to not working "in any close proximity to his coworkers," the job

numbers would be reduced as follows: medium and light cleaner positions (800,000,

400,000) and medium,  light, and sedentary packer (150,000, 300,000, 40,000) (Tr. 48-49).

She testified that restrictions to working "in isolation;" need to leave the work space for 15

minutes of every 60; the need to miss two days of work each month; or, being off task for

at least 20 percent of the workday on a consistent basis would eliminate all gainful

employment (Tr. 49-50).  She stated that her testimony was consistent with the information

found in the *Dictionary of Occupational Titles* ("DOT") and *Selected Characteristics of*

*Occupations* ("SCO") but that her testimony regarding being off task, absenteeism, breaks,

working in isolation, working in tandem with others, and quotas was based on her research

and own professional experience (Tr. 50).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, ALJ McKay found the severe impairments of

"Asperger's syndrome, gender identity disorder in adulthood, social phobia/generalized

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

anxiety disorder/major depressive disorder, ergophobia, and schizoid personality disorder with depression" but determined that none of the conditions met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). She found that while Plaintiff reported migraine headaches, he had not received any treatment for the alleged condition (Tr. 18). ALJ McKay found moderate limitations in understanding, remembering, or applying information; marked limitation in interacting with others; and moderate limitation in concentrating, persisting, or maintaining pace and adapting or managing himself (Tr. 19-20).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for work at all exertional levels with the following additional limitations:

> [L]imited to work that is low stress, which is work that is self-paced and not at a production rate, and where the job duties are not interdependent with those of coworkers; the claimant's work must be simple, routine, and repetitive, involve no contact with the general public and no requirement to work in close proximity to coworkers (e.g., not within 10 feet of coworkers) (Tr. 20).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the work of a cleaner and packer (Tr. 25, 48-49).

The ALJ discounted Plaintiff's professed degree of psychological limitation, noting that he was able to leave the house, ride his bike, go to therapy appointments, and go to the library (Tr. 21). She cited March, 2014 intake records noting Plaintiff's report that he voluntarily quit a retail job after two weeks (Tr. 22). She cited June, 2015 records noting a stable mood and that Plaintiff had recently enjoyed time out of town visiting his grandfather

(Tr. 22).  The ALJ cited Dr. Blenman's advice to Plaintiff to "look for a part-time job" (Tr. 23).  The ALJ stated that she "decline[d] to adopt" Dr. Newhouse's non-examining opinion because "he relied on a now-obsolete psychiatric review technique and could not consider evidence now available at the hearing level . . ." (Tr. 24).

### STANDARD OF REVIEW

 "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).   The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*,  800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6ᵗʰ Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).    However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."
*Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999).

## **ANALYSIS**

### **A.  The ALJ's Step Three Findings**

Plaintiff argues first that the evidence demonstrates that he met or medically equaled a listed impairment.  *Plaintiff's Brief,* (ECF No. 11, PageID.379.)   He acknowledges Dr. Newhouse's finding that he did not medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 60).  However, he notes that  the ALJ declined to adopt  Dr. Newhouse's  findings  on  the  basis  that  he  relied  on  a  now-obsolete  psychiatric  review technique (Tr. 24).  Plaintiff argues therefore that the ALJ's finding that he did not medically equal a listed impairment is not supported by an opinion by an acceptable medical source.

On a related note, Plaintiff contends the ALJ erred by finding only moderate limitation in the category of "adapting or managing" himself, noting that a finding that he experienced marked limitation (coupled with the marked limitation in interacting with others) would direct a finding of disability at Step Three of the administrative analysis.  (ECF No. 11, PageID.385.)(*citing* Tr. 20).

"Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Reynolds v. Commissioner of Social Sec.,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2

(6th Cir. April 1, 2011)(*citing* 20 C.F.R. § 404.1525(a)).  At Step Three of the administrative

sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed

conclusively disabled [] and entitled to benefits."  At Step Three, the claimant must satisfy

*all* of listing's criteria for a finding that s/he meets a listed impairment. *See Duncan v. Sec'y

of Health & Human Servs*., 801 F.2d 847, 855 (6th Cir. 1986); *Houston v. Colvin*, 2017 WL

82976, at *2 (E.D. Mich. January 10, 2017)(Drain, J.)(same).  Moreover, Plaintiff bears the

burden of establishing that his or her impairments meet or medically equal a listed

impairment.  *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987).

### 1.   Whether Plaintiff Met a Listing[4]

The ALJ stated that she considered whether Plaintiff met the requirements of the

following listed impairments: 12.03 (Schizophrenia Spectrum and Other Psychotic

Disorders), 12.04 (Depressive, Bipolar and Related Disorders), 12.06 (Anxiety and

Obsessive-Compulsive Disorders), 12.08 (Personality and Impulse-Control Disorders), and

12.10 Autism Spectrum Disorder (Tr. 19).  She noted diagnoses for the above conditions but

observed that for each listing, Plaintiff did not meet the "'B' Criteria," common to all of the

listings, which requires the following:

> Extreme limitation of one, or marked limitation of two, of the following areas
> of mental functioning []:
>
> 1. Understand, remember, or apply information []

_____

[4]Because determination of whether Plaintiff met a listing is relevant to whether he
medically equaled a listing, his Step Three arguments are considered in reverse order.

2. Interact with others []

3. Concentrate, persist, or maintain pace []

4. Adapt or manage oneself [].

20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.03, 12.04, 12.06, 12.08, 12.10.

Citing the treating records, the ALJ found that Plaintiff experienced moderate limitation in the ability to "understand, remember, or apply information; marked limitation in the ability to "interact with others;" and moderate limitation in the ability to "concentrate, persist, or maintain pace" and "adapt or manage" himself (Tr. 19-20). Because Plaintiff did not experience one extreme limitation or two marked limitations, the ALJ found that Plaintiff did not meet any of the above listings.

Plaintiff argues that contrary to the ALJ's finding, he experiences "marked" limitation in adapting or managing himself ("adaptation") which would give him a second marked limitation required to meet the "'B' Criteria" for any or all of the above listings. However, the ALJ's finding of only moderate limitation in adaptation is well supported and explained. The ALJ noted that Plaintiff was able to shop, visit the library, and interact appropriately "in those settings" (Tr. 20). She observed that Plaintiff was able to adapt to the addition of a new family member to the household without experiencing a breakdown and was able to perform his own laundry chores (Tr. 20, 23).

My own review of the transcript supports the ALJ's findings. Treating notes created the same month as the alleged onset of disability state that Plaintiff experienced good results

-14-

with psychotropic medication (Tr. 227). July and August, 2016 counseling records state that self-calming techniques learned in therapy reduced his psychological symptoms (at worst) to moderate levels (Tr. 275-276). Dr. Blenman's September, 2016 and January, 2017 records state that Plaintiff was either biking more frequently or using a stationary bike for exercise (Tr. 304). In June, 2017, Plaintiff again reported reduced depressive symptoms with an increase in psychotropic medication (Tr. 292).

Dr. Blenman's records also support the conclusion that Plaintiff was unmotivated rather than unable to work. September, 2016 records note that while Plaintiff was exercising, he had not tried to find a job and was "not interested" in online classes (Tr. 304). Dr. Blenman (notably the longest-term treating provider of record) opined in April, 2017 that Plaintiff should seek part-time work for a "sense of purpose" (Tr. 23, 300).

As such, the ALJ did not err in finding that Plaintiff did not experience more than moderate limitation in adaptation.[5]

**2.  Whether Plaintiff Medically Equaled One of the Listings**

In opposition to Plaintiff's argument that the absence of an equivalency opinion by an acceptable medical source requires a remand, Defendant cites SSR 17-2p, which states that an ALJ may find that a claimant does not medically equal a listed impairment without

---

[5]Moreover, while Plaintiff challenges the ALJ's findings regarding the "'B' Criteria" for these listing, he does not address whether he meets the threshold "'A' Criteria" for one or more of the listings which would be required for a finding that he "met" at least one of the listings.

the support of a medical opinion.  SSR 17-2p, 2017 WL 3928306, at *4 (March 27, 2017).

In contrast to SSR 17-2p, SSR 96–6p states that a Step Three finding that a claimant does not

medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 must be

supported by a medical opinion.  SSR 96-6p at *3 ("longstanding policy requires that the

judgment of a physician (or psychologist) designated by the Commissioner on the issue of

equivalence . . . .").

However, a split of authority exists as to whether SSR 17-2p or the now-rescinded

SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) applies to this case in which the claim for

benefits was filed on February 4, 2016 - long before the effective date for SSR 17-2 of March

27, 2017.  *See* Hearing and Appeals Law and Litigation Manual ("HALLEX") I-5-3-30,

2017 WL 1362776, at *5 (*last revised* October 2, 2017)(prior rules to be employed for

applications filed before March 27, 2017).  A number of courts have interpreted HALLEX

to state that the prior rulings, which include SSR 96-6p, should be applied to claims filed

before March 27, 2017.  *Heffner v. Commissioner, Social Sec.*, 2017 WL 9292242, at *9

(D.S.C. August 3, 2017); *Foy v. Berryhill*, 2018 WL 3707837, at *6 (D.Md., August 3,

2018); *Atchley v. Berryhill*, 2018 WL 1135457, at *5–6 (D.S.D. February 28, 2018); *but see*

*Balknight v. Commissioner of Social Sec.*, 2019 WL 4011881, at *27 (E.D.Mich. July 31,

2019)(SSR 17-2p to be applied retroactively to applications made before March 27, 2017).

However, the Court need not choose sides at this time given that a remand on the basis

of the ALJ's equivalency finding is not warranted under either SSR 17-2p or the now-

rescinded SSR 96-6p. First, the transcript actually contains an equivalency opinion by Dr. Newhouse (Tr. 56-57, 64).  While the ALJ declined to accept Dr. Newhouse's findings on the basis that he employed a now-obsolete psychiatric technique and because he was not able to review the more recent treating evidence, the fact remains that the record contains an opinion that Plaintiff did not medically equal a listing made by an acceptable medical source. Thus, the technical requirements of SSR 96-6p are satisfied.

Second, Plaintiff has not made the case that the ALJ's equivalency finding is not supported or that his conditions actually equal a listed impairment.  Under § 416.926(a), "an impairment is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment."  § 416.926(b)(1) states in relevant part that a finding of medical equivalence can be made where the claimant has an impairment found among the listed impairments that (A) does not meet all of the requirements of the listing or, (B) meets all of the requirements but "one or more of the findings is not as severe as specified in the particular listing;" provided that "(ii) other findings related to [the] impairment . . . are at least of equal medical significance to the required criteria."  While as discussed above, Plaintiff argues that he meets the "'B' Criteria" for the relevant listings, he fails to cite the threshold requirements for any of the listings, much less provide a basis for an equivalency finding.  Where the claimant cannot make a reasonable showing that he medically equals a listed impairment, the failure to obtain an equivalency opinion does not constitute grounds for remand.  *See Smith  v. Commissioner*

-17-

*of Social Security*, 2019 WL 3243768, at *5 (E.D.Mich., June 30, 2019)(Davis, M.J.)(*adopted,* 2019 WL 3239252 (E.D. Mich. July 18, 2019)(*citing Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004)).  "It is the claimant's burden at this third step in the sequential evaluation to bring forth evidence to establish that he or she meets or equals a listed impairment." *Retka v. Commissioner of Social Sec.*, 1995 WL 697215, at *2 (6ᵗʰ Cir. November 22,1995)(*citing Evans v. Secretary of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987)).  Accordingly, I recommend that the ALJ's Step Three finding that Plaintiff did not medically equal a listed impairment be upheld.

**B.  The Residual Functional Capacity**

Plaintiff also argues that the ALJ erred by failing to perform a "function by function" assessment of his mental abilities as required by SSR 85-15.  (ECF No. 11, PageID.386.)  He also disputes the Step Five finding that he was capable of a significant range of unskilled work, contending that the VE's job testimony given in response to the hypothetical question (forming the basis of the RFC found in the administrative opinion) did not account for his full degree of psychological limitation.  (ECF No. 11, PageID.17.)

"RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184 at *2. (July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including objective findings, non-medical evidence, and activities of daily living. *Id.* at *7.  The analysis must include the alleged psychological and physical limitations. 20

-18-

C.F.R. §§ 404.1545, 416.945. In crafting the RFC, the ALJ must consider how the psychological limitations affect the ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p at *6.  SSR 85-15, listing the same work functions found in SSR 96-8p, notes that a "substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base."  1985 WL 56857, at *4 (1985).

First, Plaintiff claims that in crafting the RFC, the ALJ ought to have discussed each entry in a long list of possible limitations including the ability to be punctual, work within a schedule, maintain attendance, accept criticism, and the potential for psychologically-based work interruptions.  However, the ALJ adequately acknowledged Plaintiff's moderate limitation in understanding, remembering, or applying information, concentration, and adaption and marked limitation in interacting with others (Tr. 19-20).  Although the transcript shows that Plaintiff was a good student, visited the library, and read novels, the ALJ acknowledged his moderate limitations in processing information and concentration by limiting him to unskilled, self-paced, non-production rate work (Tr. 20).  As to the moderate limitation in adaption, the ALJ limited him to work that was "low stress" and "routine and repetitive" (Tr. 20).  The ALJ acknowledged Plaintiff's marked limitation in interacting with others by limiting him to "self-paced" work "where the job duties are not interdependent with those of coworkers," no interaction with the general public, and no work "in close proximity

to coworkers" (Tr. 20).

While Plaintiff notes that a restriction to working "in isolation" would eliminate all gainful employment, substantial evidence, discussed at length by the ALJ undermines the allegation that he was required to work in isolation. The ALJ noted that Plaintiff was able to interact with others in a variety of situations without psychological symptoms including going to the library, adapting to living in a household with extended family members, and interacting with treating sources (Tr. 20-22). In support of the restrictive RFC, the ALJ cited therapy records showing that Plaintiff experienced a significant improvement in psychological symptoms with therapy and medication (Tr. 24). She reasonable concluded that with such modalities, he would be "able to organize his previously formless days into a routine" (Tr. 24).

Plaintiff's argument that a more detailed rationale for the RFC is required is not well taken. "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Commissioner of Social Sec.*, 30 Fed.Appx. 542, 547–548, 2002 WL 343402, at *5 (6th Cir. March 4, 2002)(internal citations omitted). "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* Plaintiff's apparent contention that the "'B' Criteria" limitations ought to have been included verbatim in either the hypothetical question to the VE or the RFC should also be rejected. *See Koster*

*v. Colvin,* 2015 WL 413795, at *13 (N.D.Ohio January 30, 2015)("[I]t is well established that the paragraph B criteria used at steps 2 and 3 of the sequential analysis is "not an RFC assessment.")(*citing* SSR 96–8p   at *4).   Because the RFC is supported by substantial evidence and well explained, Plaintiff's argument for remand on this basis should be rejected.

For overlapping reasons, Plaintiff's claim that the ALJ erred by rejecting his professed degree of psychological limitation does not provide grounds for remand.   Specifically, Plaintiff faults the ALJ for citing his ability to perform errands, attend appointments, and perform household tasks in support of the non-disability finding, noting that while he was able to engage in such activity on a sporadic basis, it cannot be equated with ability to perform full-time work.   (ECF No. 11, PageID.391.)(*citing Walston v. Gardner,* 381 F.2d 580, 585-586 (6th Cir. 1987).   However, *Walston,* where the Court held that the claimant's ability to engage in a number of household activities for a short period in spite of great pain, is inapposite to the present case where Plaintiff does not claim that he lacks the physical stamina to perform full-time work within the limitations set forth in the RFC.   To the contrary, the evidence showing that Plaintiff was a good student in high school, *i.e.*, a "structured" environment, possessed the concentrational ability to read novels, and was by his treating physician's account capable of at least part-time work supports the ALJ's finding that Plaintiff could perform a limited but significant range of unskilled work despite his psychological conditions.   *See Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542–43

(6th Cir. 2007)(*citing Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) )(ALJ entitled to consider household and outside activities in evaluating the alleged work-related limitations).

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's legitimate psychological limitations.   However, because ALJ McKay's determination was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and adequately articulated, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #12] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #11] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R.  Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  September 16, 2019

## CERTIFICATE OF SERVICE

I hereby certify on September 16, 2019, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on September 16, 2019.

s/Carolyn Ciesla
Case Manager to R. Steven Whalen
Executive U.S. Magistrate Judge

-23-